## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Andre Cox,

Plaintiff,

v.

United States of America,

Defendant.

**Case No. 17-cv-4773 (SRN/SER)**

**REPORT AND RECOMMENDATION**

STEVEN E. RAU, United States Magistrate Judge

This matter is before the Court on Defendant the United States of America's (the "Government") Motion to Dismiss [Doc. No. 9] and Plaintiff Andre Cox's ("Cox") motion for an order declaring this court has jurisdiction to hear this case [Doc. No. 20].[1] This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that the Government's Motion to Dismiss be granted, that Cox's motion be denied, and that this case be dismissed without prejudice.

## I.    BACKGROUND

Cox initially filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 [Doc. No. 1], but because he alleged that his constitutional rights were violated, and not the fact or duration of his detention, and because Cox is no longer in custody, the Court determined that "a petition for a writ of habeas corpus is not the proper vehicle for Cox to bring his claim." (Order

---

[1]    Although not styled as such, the first sentence of Cox's Answer to Motion to Dismiss could be construed as a motion because it states, "Petitioner moves the Court for an order declaring this Court has jurisdiction to hear this case."

Dated Nov. 1, 2017) [Doc. No. 5 at 1]. Considering Cox's pro se status, the Court construes his petition as a traditional civil complaint and refers to it as such.[2] *See* (*id.* at 1).

In his Complaint, Cox alleges that his First Amendment rights were violated on February 27, 2017, when a counselor, identified as A. McClatchey ("McClatchey") at the Federal Correctional Institute in Milan, Michigan ("FCI-Milan") told him to stop praying. (Compl. at 9–10). Cox alleges that McClatchey told him "I'll give you something to pray for if you don't stop." (*Id.* at 10). Cox alleges that this action burdened the free exercise of his religion in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (*Id.* at 10–11).

Cox submitted a Federal Torts Claim Act claim to the North Central Regional office of the Federal Bureau of Prisons ("BOP"), which denied his claim on May 25, 2017. (*Id.* at 9–10). Cox now seeks relief "so stated" in his tort claim because FCI-Milan staff members infringed upon his religious beliefs, and the infringement was "not reasonably related to any valid [p]enological interest." (*Id.* at 12).

The Government moves to dismiss, arguing that the Court lacks subject-matter jurisdiction and that Cox has failed to state a claim upon which relief can be granted. Cox opposes the motion, and the matter is ripe for adjudication.

## II.    DISCUSSION

### A.    Legal Standard

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims."

---

[2]    Although it is typically better practice to obtain an individual's consent before converting a habeas petition to a civil proceeding, the Court found this was not necessary because Cox was no longer a prisoner. (Order Dated Nov. 1, 2017 at 1 n.1) (citing *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014)).

*Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013) (Tunheim, J.). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.*

### B.    Analysis

The Government argues this Court lacks subject-matter jurisdiction for three reasons: (1) the FTCA does not waive sovereign immunity over claims that the United States or its agents violated an individual's constitutional rights; (2) RLUIPA does not waive the federal government's sovereign immunity; and (3) to the extent Cox alleges a claim under the Religious Freedom Restoration Act ("RFRA"), he has failed to exhaust his administrative remedies, RFRA does not waive the federal government's sovereign immunity and therefore does not allow for money damages, and any claim for injunctive relief under RFRA is moot. (Mem. in Supp. of Mot. to Dismiss, "Mem. in Supp.") [Doc. No. 11 at 5–14]. The Court addresses each argument in turn.

### 1.    FTCA Claim

Cox presented his claim to the BOP and this Court as an FTCA claim for violation of his First Amendment right to free exercise of his religion. (Compl. at 9–10); (Exs. A, B, Attached to Decl. of Bahram Samie) [Doc. Nos. 13-1, 13-2] (Cox's completed SF-95 administrative tort claim and the BOP's letter denying his tort claim).[3]

---

[3]    Because Cox refers to his administrative tort claim in his Complaint, the claim is "necessarily embraced by the pleadings" and may be considered in deciding a Rule 12 motion

The federal government and its agencies enjoy sovereign immunity—and therefore cannot be sued—unless the immunity is waived. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA "waived the sovereign immunity of the United States for certain torts committed by federal employees." *Id.* Specifically, the FTCA permits a civil action against the United States for money damages when the claimant suffers

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Regardless of the injury suffered, however, the FTCA is not the appropriate vehicle to challenge a constitutional violation. *See FDIC*, 510 U.S. at 478 (stating that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims"). Thus, the Court lacks subject-matter jurisdiction over Cox's FTCA claim because he presented it as a violation of his constitutional rights, a claim for which the United States has not waived its sovereign immunity. *Cf. Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (establishing a cause of action for a constitutional violation committed by federal officers, but not the federal government or its entities).

## 2. RLUIPA Claim

Cox also alleges that his right to free exercise was burdened in violation of RLUIPA. (Compl. at 10–11). RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The term

---

because it is not a "matter[] outside the pleading." *See Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

"institution" is defined as a facility or institution " which is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State." *Id.* § 1997(1)(A). The "government" is defined as "a State, county, municipality, or other governmental entity created under the authority of a State," branches and other divisions of those entities, or "any other person acting under color of State law."[4] *Id.* § 2000cc-5(4)(A).

At the time of his incarceration, Cox was in federal prison, not state prison, and he describes the conduct of employees of the federal prison. *See* (Compl. at 9–10) (describing conduct at FCI-Milan). Thus, the Court concludes that it lacks jurisdiction to consider Cox's claim because RLUIPA does not waive the federal government's immunity from suit for a violation of an individual's First Amendment right to the free exercise of his or her religion when the individual is incarcerated in federal prison and the actions that constituted the alleged violation were committed by a federal government employee. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1077 (9th Cir. 2008) (en banc) (stating that subject to certain exceptions, "RLUIPA does not apply to a federal government action"); *Lovelace v. Lee*, 472 F.3d 174, 217 (4th Cir. 2006) ("RLUIPA deals exclusively with state, rather than federal, prisons.")

### 3.    RFRA Claim

Because a court must liberally construe a pro se plaintiff's pleadings, the Court considers whether Cox has stated a claim under RFRA. *See* (Ex. A at 1) (Cox's administrative tort claim filed with the BOP, alleging that his First Amendment rights were violated as prohibited by RLUIPA and RFRA); *see also Moore v. Cross*, No. 05-cv-2875 (JMR/RLE), 2007 WL 835417,

---

[4]    The federal government is included in the definition of "government" for the purposes of RLUIPA in two parts not applicable here: § 2000cc-2(b), governing the burden of persuasion, and § 2000cc-3, governing the rules of construction. *See* § 2000cc-5(4)(B).

at *12 (D. Minn. Mar. 15, 2007) (Erickson, Mag. J., as adopted by Rosenbaum, C.J.) (construing a RLUIPA claim against the federal government as brought under RFRA).

RFRA specifically allows a plaintiff to sue the United States or its agents if they substantially burdened a person's exercise of religion unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b); *see also* § 2000bb-2(1) (stating that "the term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity").

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must fully exhaust his administrative remedies before filing a federal lawsuit. 42 U.S.C. § 1997e(a). The Government argues that Cox did not follow the BOP's three-tier administrative remedy program. (Mem. in Supp. at 8–9). The only administrative remedy Cox sought under this procedure "involve[d] an appeal of the findings of the Discipline Hearing Officer (DHO), and was submitted in March 2016." (Decl. of Joseph McGuire) [Doc. No. 14 ¶ 6]. In other words, the sole administrative remedy for which Cox used the BOP's three-tier procedure was not related to the First Amendment violation he alleges in this lawsuit. Cox asserts that he did not seek administrative remedies because "[t]he other remedies will not suffice" and because McClatchey threatened to "destroy" Cox if he "wrote up" the incident. (Ex. A at 3); *see also* (Pet'r's Mem. in Supp. of Answer to Dismiss, "Mem. in Opp'n") [Doc. No. 21 at 2–3] (citing *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016), for the proposition that an administrative process is unavailable, and therefore not required, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Cox did, however, present his FTCA claim to the BOP as the FTCA requires. *See* 28 U.S.C. § 2401(b) (requiring

6

tort claims against the United States to be "presented in writing to the appropriate Federal agency"). The Government does not address whether Cox's filing of an administrative tort claim would satisfy the PLRA's exhaustion requirement, even though—as explained above—an FTCA claim is not the appropriate vehicle to challenge constitutional violations. The Court need not determine whether Cox was excused from exhausting his administrative remedies or whether Cox exhausted his administrative remedies through this administrative tort claim, however, because the Court lacks subject-matter jurisdiction over Cox's RFRA claim.

A plaintiff may "obtain appropriate relief against a government" for a violation of RFRA. § 2000bb-1(c). Cox seeks "the relief so stated in the original Tort Claim," which in turn seeks a $25,000 settlement or $1,000,000 if there is a trial. *See* (Compl. at 12); (Ex. A at 1).

While "appropriate relief" is not defined and the Eighth Circuit has not addressed it, the Court concludes that appropriate relief does not include money damages for claims against the United States. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court considered whether the description of "appropriate relief against a government" in RLUIPA included monetary damages. *See* § 2000cc-2(a). The Supreme Court determined that because the states did not unequivocally "waive their sovereign immunity to suits for damages" and because such waivers must be narrowly construed, RLUIPA does not constitute a waiver of sovereign immunity for damages against a state. 563 U.S. at 288. Three United States Courts of Appeals have reached the same conclusion with respect to RFRA's "appropriate relief"; that is, RFRA does not waive the federal government's sovereign immunity for damages. *See Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 840–41 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006). Courts in this District have reached the same conclusion. *See*

*Cooper v. True*, No. 16-cv-2900 (MJD/KMM), 2017 WL 6375609, at *6 (D. Minn. Nov. 2, 2017) (Menendez, Mag. J.), *adopted by* 2017 WL 6372651 (Davis, J.) (Dec. 12, 2017); *Arafat v. U.S. Dep't of Justice*, No. 12-cv-3189 (ADM/FLN), 2013 WL 5964459, at *2 (D. Minn. Nov. 8, 2013) (Montgomery, J.). Considering the appellate courts' determinations that "appropriate relief" under RFRA does not include monetary damages for claims against the United States, and because the Supreme Court determined that "appropriate relief" under RLUIPA does not include monetary damages against the states, the Court concludes that it lacks subject-matter jurisdiction over Cox's RFRA claim for monetary damages because the government has not waived its sovereign immunity in this respect.[5]

Because the Court lacks subject-matter jurisdiction over Cox's claims as alleged in his Complaint and administrative tort claim, the Court recommends the Government's Motion to Dismiss be granted. To the extent Cox's Answer to Motion to Dismiss can be construed as a motion "for an order declaring this Court has jurisdiction to hear this case," the Court correspondingly recommends the motion be denied.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[5]      The Court does not construe Cox's Complaint or administrative tort claim as seeking injunctive relief. Regardless, his release from custody renders any such a claim moot. Although Cox is under supervision by the BOP, the facts of this case arise from his status as a prisoner and nothing in the Compliant or administrative tort claim suggests there is injunctive relief that would remedy his allegations now that he has been released.
        Cox also claims that his "intention was and is to sue the B.O.P. agents in their [individual] and official capacity." (Mem. in Opp'n at 1). Although Cox is proceeding pro se and his Complaint must be liberally construed, "the requirement of properly naming defendants cannot be overlooked," and this Court cannot construe his Complaint to name defendants he has not identified or served. *See Arafat*, 2013 WL 5964459, at *3.

1.  Defendant the United States of America's Motion to Dismiss [Doc. No. 9] be **GRANTED**;

2.  Petitioner Andre Cox's motion for an order declaring this court has jurisdiction to hear this case, *see* [Doc. No. 20], be **DENIED**; and

3.  This case be **DISMISSED WITHOUT PREJUDICE**.

Dated: June 28, 2018

 *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

## Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).